**Albert FRANCIS, Jr., Plaintiff–Appellee,**

v.

**Thomas A. COUGHLIN, III, Commissioner, Department of Correctional Services; Charles J. Scully, Superintendent, Green Haven Correctional Facility; Capt. Ronald E. Miles, Green Haven Correctional Facility; Lt. Charles Greiner; Sgt. B.J. Farrell; Ronald Leight, Richard W. Prouty, Frank Arizmendi, Correctional Officers; Harold J. Smith, Superintendent, Attica Correctional Facility; and Charles Hernandez, all of New York State Department of Correctional Services, Jointly, Severally & Individually, Respectively, Defendants,**

**Appeal of Charles GREINER, Defendant–Appellant.**

**No. 1262, Docket 89–2074.**

United States Court of Appeals, Second Circuit.

Argued June 19, 1989.

Decided Dec. 4, 1989.

**44**

William R. Maguire, New York City (Hughes Hubbard & Reed, New York City, of counsel), for plaintiff-appellee.

Charles R. Fraser, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. State of New York, Jan P. Ryan, Asst. Atty. Gen., New York City, of counsel), for defendant-appellant.

Before MESKILL, PIERCE, and MAHONEY, Circuit Judges.

PIERCE, Circuit Judge:

▪ This appeal involves the rights of an inmate during the course of a prison disciplinary hearing. We must determine whether, in July 1982, an inmate charged with violating regulations in a New York State prison enjoyed a clearly established constitutional right (1) to a hearing before a hearing officer who had not prejudged his guilt; (2) to be informed about and to comment on the evidence against him; and (3) to be present during the testimony of his witnesses. The district court ruled in favor of plaintiff-appellee on each point. We hold that the first and second rights were clearly established, and, hence, as to those rights, we affirm.[1] As to the alleged

---

**1.** On occasion, rather than affirming a district court's denial of a motion for summary judg-

third right, we conclude that such a right was not clearly established, and, hence, we reverse.

## BACKGROUND

In July of 1982, appellee Albert Francis, Jr., was an inmate at New York State's Green Haven Correctional Facility. On July 23, 1982, Francis was accused by two corrections officers of participating in a fight between inmates and prison officials. On July 30–31, 1982, in accordance with prison policy, a "Superintendent's Proceeding" was held to determine whether Francis violated prison rules. The hearing was conducted by appellant, Lt. Charles Greiner, who was assigned to serve as hearing officer and who found Francis had violated the rules. As a sanction, Francis was, *inter alia*, segregated from the general prison population and penalized 365 days good time credit.

Francis was subsequently transferred to Attica Correctional Facility, where he commenced an Article 78 proceeding in New York State Supreme Court, Wyoming County, seeking release from the segregated Special Housing Unit ("SHU") into which he had been placed and restoration of his good time allowance. Converting the suit into a habeas corpus action, the New York court vacated the findings of the Superintendent's Proceeding, concluding that the proceeding was conducted in violation of state law. A second hearing was held by the prison authorities on March 4, 1983, with substantially the same outcome and the same punishment imposed as at the first hearing. The second hearing—which was not conducted by Charles Greiner— was also successfully challenged by Francis in New York State Supreme Court. Francis was then released into the general prison population, having spent 311 days in SHU.

After prevailing in the second state court proceeding on April 29, 1983, Francis, on March 21, 1984, commenced a civil rights action under 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York. In this action, Francis, *pro se*, alleged that various state officials had violated his federal constitutional rights by knowingly bringing false charges against him and by conducting the subsequent disciplinary hearings in an unlawful manner. Defendants, including Greiner, moved for dismissal of the complaint for failure to state a claim pursuant to Fed.R. Civ.P. 12(b)(6). The motion was denied by the district court. On appeal, a panel of this circuit reversed and remanded, holding that the district court erred in failing to address the qualified immunity defense that was raised in the Rule 12(b)(6) motion. *Francis v. Coughlin*, 849 F.2d 778 (2d Cir. 1988) (per curiam). Upon remand, the district court again denied the motion, which, because discovery had been completed in the interim, this time included in the alternative a request for summary judgment under Fed.R.Civ.P. 56. Pursuant to the collateral order doctrine, *Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985), Greiner again appeals to this court, pressing his claim that he is entitled to qualified immunity with respect to Francis's claims that Greiner denied him (1) his right to a hearing before a hearing officer who had not prejudged his guilt; (2) his right to be told what the evidence against him was, and to comment on that evidence; and (3) his right to call witnesses and to be present for their testimony.

## DISCUSSION

The broad contours of the doctrine of qualified immunity were delineated by the

---

ment based upon a claim of qualified immunity, we have dismissed the appeal for lack of appellate jurisdiction. We note that on those occasions in which we have opted for dismissal, "the resolution of the qualified immunity defense ... involve[d] questions of both law and fact." *See Mahoney v. Hankin*, 844 F.2d 64, 68–69 (2d Cir.1988); *see also Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir.1989) ("the extent to which the immunity defense is available must await fact-

finding"); *White v. Frank*, 855 F.2d 956, 962 (2d Cir.1988) (availability of immunity must await "further exploration of the facts"); *Group Health Inc. v. Blue Cross Ass'n*, 793 F.2d 491, 497 (2d Cir.1986) ("the immunity question cannot be decided without addressing ... essential and disputed questions of fact"). Since resolution of the immunity questions presented herein does not turn on such fact-finding, affirmance is the proper disposition.

Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Harlow* instructs that government officials performing discretionary functions are immunized from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. To defeat an official's claim of qualified immunity, the individual's right must have been clearly established at the time of the alleged violation. *Id.*

■ Several guidelines have emerged from case law to clarify a court's inquiry into when a right is clearly established. First, the particular right under consideration must be defined with reasonable specificity. Next, the court must determine whether the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right in question. The ultimate inquiry is whether in light of preexisting law the unlawfulness of the defendant official's actions is apparent. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

### A.  Bias and Prejudgment

■ Francis alleges that he "was entitled to a hearing before a hearing officer who had not prejudged his guilt," and that this right was clearly established in 1982. For the reasons stated below, we agree.

We recognize that the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally. Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process. *See Cleavinger v. Saxner,* 474 U.S. 193, 203–04, 106 S.Ct. 496, 501–02, 88 L.Ed.2d 507 (1985). This fact, however, is not dispositive of the claim at issue here. Francis's allegation goes beyond the mere assertion that Greiner was less than a perfectly neutral arbiter, and that Francis was thus denied a fair chance to prevail at the disciplinary hear-

ing. Instead, Francis contends that because of Greiner's bias, he (Francis) had *no* chance to prevail at the hearing. Since the touchstone of the right of due process is freedom from arbitrary governmental action, *Ponte v. Real,* 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985), it is axiomatic that a prison disciplinary hearing in which the result is arbitrarily and adversely predetermined violates this right.

Moreover, we find that the precise right advanced here was clearly established at the time of the events in question. As early as 1975, we stated the obvious, namely, that it would be improper for prison officials to decide the disposition of a case before it was heard. *Crooks v. Warne,* 516 F.2d 837, 840 (2d Cir.1975); *see also McCann v. Coughlin,* 698 F.2d 112, 122, 124 (2d Cir.1983) (noting *Crooks* held members of prison committee must be "fair and impartial," and stating that by 1979 a prisoner's right to an impartial tribunal was "unequivocal"). Prison officials are charged with knowledge of relevant decisional law, especially the decisions of the circuit in which they perform their official duties. Appellant Greiner is thus charged with knowledge of *Crooks v. Warne,* and, accordingly, is not entitled to qualified immunity against Francis's allegation of prejudgment on the ground that the right of an inmate to be heard by a hearing officer who had not prejudged his guilt was not clearly established.

■ We also reject Greiner's contention that Francis's "specifications of . . . bias do not show actual prejudgment." Since the issue arises on a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-moving party, Francis. Francis alleges, *inter alia,* that Greiner suppressed evidence, distorted testimony, and never informed Francis of testimony against him. Drawing all reasonable inferences in favor of Francis, as we must, we hold that his allegations are sufficiently supported by the record to withstand Greiner's motion for summary judgment based on the claim of qualified immunity.

■ Finally, we note that the bare assertion of claims of bias and prejudgment, merely because they implicate issues involving the defendant's state of mind, should not preclude pre-trial disposition of a case. Recognizing that a contrary position would render the summary judgment rule "sterile," *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1987), we have observed in the context of an employment discrimination claim that while summary judgment is ordinarily inappropriate where an individual's state of mind is at issue, a denial of the motion does require that the non-moving party identify evidence that would permit the trier of fact to draw a reasonable inference of unlawful conduct. *See id.; Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (to avoid summary judgment, non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor"). Thus, a plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment; here, as noted above, Francis has presented more than a mere conclusory allegation.

### B. *Right to Be Informed About and Comment Upon Adverse Evidence*

■ Francis alleges Greiner did not inform him of the testimony of an inmate witness and that Greiner did not inform him of the testimony of the accusing officers. Francis contends that the right to be informed about and to comment upon such evidence was clearly established in 1982. We agree. The applicable law was clearly established by our in banc decision in *Sostre v. McGinnis*, 442 F.2d 178 (2d Cir.1971), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). In *Sostre*, "[w]e held that, at a minimum, a prisoner is entitled to be 'confronted with the accusation, informed of the evidence against him ... and afforded a reasonable opportunity to explain his actions.'" *Nieves v. Oswald*, 477 F.2d 1109, 1113 (2d Cir.1973) (quoting *Sostre*, 442 F.2d at 198); *see also Wilkinson v.*

*Skinner*, 34 N.Y.2d 53, 58, 356 N.Y.S.2d 15, 21, 312 N.E.2d 158, 161 (1974) (citing *Sostre*, New York Court of Appeals holds that an inmate's minimum due process rights include "the right to know the charges and evidence against him and to explain his action.").

Greiner correctly notes that in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in discussing the procedural due process rights of prisoners, the Supreme Court was silent on the right of an inmate to be informed of the evidence *during* the course of a disciplinary hearing, holding in that case only that an inmate is entitled to "a 'written statement by the factfinders as to the evidence relied on,'" *id.* at 564, 94 S.Ct. at 2979 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)), *after* the hearing is concluded and sanctions assessed. Nothing in *Wolff*, however, hints that *Sostre's* clear holding is to be limited; indeed, the two cases are entirely consistent. In *Sostre*, quoting the Supreme Court, we made clear the factors that were to be taken into account in deciding "'[w]hether the Constitution requires that a particular right obtain in a specific proceeding[:] [t]he nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding.'" 442 F.2d at 196 (quoting *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960)). Here, the nature of the proceeding is the same as it was in *Wolff*, and the possible burden on that proceeding and the nature of the right involved are essentially the same. Thus, far from eviscerating the holding of *Sostre*, *Wolff* actually reinforces it.

We recognize, of course, as the Supreme Court did in *Wolff*, 418 U.S. at 565, 94 S.Ct. at 2979, that institutional safety concerns may provide a sufficient reason for prison officials to decline to inform an inmate of adverse evidence. Here, however, Greiner does not claim Francis was denied knowledge of such evidence for reasons of institutional safety. Contrary to Francis's claims, Greiner contends that, following his standard practice, he either summarized or

played a tape recording of the interviews of witnesses and allowed Francis to comment upon those interviews. Presented with Francis's contradictory allegations and with genuine issues of material fact, we conclude that the district court was correct in denying Greiner's motion for judgment on the pleadings or for summary judgment based upon the defense of qualified immunity.

### C. *Right to Be Present for Testimony of Witnesses*

Finally, the district court found that, by 1982, the right of an inmate to call witnesses for exculpatory testimony *and* to be present for that testimony was firmly established. While a limited right to *call* such witnesses did exist in 1982, *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979, the separate question of whether Francis had a right to be *present* at the testimony of his witnesses presents a different issue. The law of this circuit was stated in *Bolden v. Alston*, 810 F.2d 353 (2d Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987):

> The District Court found that Alston ... interviewed the witnesses outside of Bolden's presence.... Alston's conduct, however, is not inconsistent with the requirements of due process.... To the extent that he took testimony from witnesses out of Bolden's presence, he did not violate any due process requirement.

*Id.* at 358. *Bolden* is a post–1982 decision, but its existence forecloses any further inquiry into the state of the law in 1982, for if, as a matter of constitutional law, the right in question does not exist presently, it is entirely superfluous to inquire into whether it appeared to exist at some earlier point. Thus, on this issue, Greiner is entitled to a grant of his Fed.R.Civ.P. 12(b)(6) motion; the district court's ruling to the contrary is hereby reversed.

### CONCLUSION

█ Prison inmates do not possess a constitutional right to be present during the testimony of witnesses during a disciplinary proceeding. Accordingly, as to this claim, the district court's denial of appellant's motion to dismiss or for summary judgment is hereby reversed, and we remand with instructions to dismiss that portion of the complaint.

Inmates do enjoy a right to a hearing before a hearing officer who has not prejudged the inmate's guilt, and a limited right to be informed about and to comment on adverse evidence. Further, both rights were clearly established at the time Greiner acted in 1982. Therefore, as to Francis's claim that Greiner violated these two rights, we affirm the district court's denial of Greiner's motion to dismiss or for summary judgment.

We express no view as to whether Francis will be able to prevail at trial; we hold only that as to two of his claims, as discussed, he is entitled to have the issues tried.

Affirmed in part; reversed in part; and remanded to the district court for further proceedings not inconsistent with this opinion.