**G. HEILEMAN BREWING COMPANY, Plaintiff,**

v.

**ROYAL GROUP, INC., Royal Insurance Group, Royal Insurance Company of America, Royal Indemnity Company, Defendants.**

No. 88 Civ. 1041 (JFK).

United States District Court, S.D. New York.

Nov. 27, 1991.

Andrews & Kurth, New York City, for plaintiff; Lynne Fischman and Laurence E. Wiseman, of counsel.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendants; Carl Pernicone, of counsel.

## OPINION AND ORDER

KEENAN, District Judge.

On June 21, 1991, this Court issued an Opinion and Order denying the motions of plaintiff and defendants for summary judgment. Following that decision, the Court granted defendants permission to file a motion to reargue. On August 26, 1991, as that motion was being submitted, a trio of decisions was handed down by the Supreme Court of Michigan. Defendants requested, and the Court granted, leave to file an amended motion to reargue. Before the Court is the motion of defendants, Royal Group, Inc., Royal Insurance Group, Royal Insurance Company of America, and Royal Indemnity Company (collectively "Royal") for reargument of the Court's June 21, 1991 decision in light of the August 26, 1991 decisions of the Supreme Court of Michigan.

The Court heard oral argument on this motion on November 18, 1991. Decision was reserved. For the reasons set forth below, defendants' motion is granted. In light of the decisions of the Michigan Supreme Court in *The Upjohn Company, et al. v. New Hampshire Insurance Company, et al.*, 438 Mich. 197, 476 N.W.2d 392 (1991), *Protective National Insurance Company v. The City of Woodhaven, et al.*, 438 Mich. 154, 476 N.W.2d 374 (1991), and *Polkow v. Citizens Insurance Company of America*, 438 Mich. 174, 476 N.W.2d 382 (1991), defendants' motion for summary judgment is granted.

## Background

For purposes of this motion, familiarity with this Court's Opinion of June 21, 1991 is assumed. A brief restatement of the facts and issues of the case, however, would be helpful to understanding the instant motion.

Plaintiff brought suit seeking an order declaring that Royal, plaintiff's former insurance carrier, was required to provide coverage for plaintiff's expenses and defense costs incurred and to be incurred in the cleanup of a state-approved toxic waste dump in Otisville, Michigan. Predecessors of the plaintiff, a corporation engaged in brewing and distributing beer, had employed a waste hauler to transport used bottle wash to the site in the 1970's.

In September 1983, five years after it closed, the dump site was placed by the Environmental Protection Agency ("EPA") on the National Priorities List under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERC-LA"). In 1985 and 1986, the EPA notified companies that had used the dump and that could be held liable for cleanup costs, entities called Potentially Responsible Parties ("PRPs"), that the EPA would either clean up the Otisville site itself and seek reimbursement from the PRPs or permit the PRPs to conduct an EPA-supervised cleanup themselves. Heileman was identified as a PRP.

After its designation as a PRP, Heileman sought to have its share of the cleanup costs covered by its insurance carriers. Heileman and its predecessors had two types of insurance coverage: general liability coverage and excess or umbrella coverage. Plaintiff's comprehensive general liability ("CGL") coverage from Royal provided up to $250,000 in coverage for property damage or bodily injury. The policies contained a pollution exclusion clause, which provided that the CGL would not apply

"(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gasses, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*"

(emphasis added).

Recent judicial definitions of "sudden and accidental" are the focus of this motion.

Plaintiff brought this action seeking a declaration that defendants were required to reimburse plaintiff for costs incurred in carrying out the EPA's mandate. Both plaintiff and defendant moved for summary judgment. After concluding that Michigan law applied to this dispute, the Court found that the case involved disputed issues of fact that precluded summary judgment. The Court denied both motions in their entirety on June 21, 1991. June 21, 1991 Order at 10, 1991 WL 120366.

Defendants now seek reargument of their summary judgment motion based on three recent decisions of the Supreme Court of Michigan, announced on August 26, 1991, which discuss the scope and applicability of pollution exclusion clauses identical to the one at issue in this action. Defendants contend that the three cases make it clear that, as a matter of law, they have no obligations to plaintiff arising out of the Otisville site, and that accordingly defendants' motion for summary judgment should be granted.

## Discussion

Motions for reargument are governed by Local Rule 3(j) which provides in pertinent part:

There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked.

In making a motion to reargue under Rule 3(j), the movant may not merely re-state its position to the Court. Rather, the party may bring to the Court's attention "matters or controlling decisions" which the Court overlooked in ruling on the original motion. *Weissman v. Fruchtman*, 124 F.R.D. 559, 560 (S.D.N.Y.1989); *Carolco*

*Pictures, Inc. v. Sirota,* 700 F.Supp. 169, 170 (S.D.N.Y.1988).

As discussed in the Court's June 21 Opinion, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted under Fed. R.Civ.P. 56 if the entire record demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When viewing the evidence, the Court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990); *see Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). "Summary judgment is appropriate if, ... 'no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.,* 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co., Inc.,* 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)). In making this determination, the district court may not resolve issues of fact; it may only ascertain whether such issues are present. *See Donahue v. Windsor Locks Bd. of Fire Cm'rs,* 834 F.2d 54, 58 (2d Cir.1987). The non-movant, in response to a properly supported motion for summary judgment, may not rest on its allegations in the pleadings, but must adduce "significant probative supporting evidence" demonstrating that a factual dispute exists. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

Having set forth the legal standards governing this motion, the Court will review the three Michigan cases that prompted this motion.

*The Upjohn Company, et al. v. New Hampshire Insurance Company, et al.* (Defendants' Exhibit B)

Plaintiff Upjohn produced toxic liquid waste in the manufacture of an antibiotic. The waste was pumped into underground storage tanks maintained by the company. The level of waste in the tanks was monitored daily by an Upjohn employee, who recorded the level and turned the records over to his supervisor. Each day's sheets were reviewed and the tank levels compared with those of the previous day.

Prior to August 16, 1982, the tank level in one particular tank had measured 475 gallons. On August 16, however, the tank level was eighty gallons. Despite the discrepancy, Upjohn continued to pump waste into the tank, which continued to show levels lower than the amount of waste that was being pumped in. As it turned out, there was a leak in the tank, and the area around the storage tank became contaminated by the leaking waste.

In *Upjohn* the court, contemplating a pollution exclusion clause identical to the one in this case, addressed two questions: "(1) is the phrase 'sudden and accidental' which appears in the pollution-exclusion clause and which creates an exception to the exclusion, unambiguous, and (2), if unambiguous, what is the proper meaning of the phrase 'sudden and accidental.'" *Upjohn,* 438 Mich. at 200, 476 N.W.2d 392.

The Court held that "sudden and accidental" was not ambiguous, and that therefore there was no need to look at the drafting history of the contract. As to the definition of those terms, the Court wrote:

We conclude that when considered in its plain and easily understood sense, 'sudden' is defined with a 'temporal element that joins together conceptually the immediate and the unexpected.' The common, everyday understanding of the term 'sudden' is ' "happening, coming, made or done quickly, without warning or unexpectedly; abrupt." ' 'Accidental' means '[o]ccurring unexpectedly and unintentionally; by chance.'

*Id.* at 207–208, 476 N.W.2d 392 (citations omitted).

Having defined "sudden and accidental" the court addressed whether the facts of *Upjohn* brought the case within the sudden and accidental exception. The Court concluded that the release of the waste from the leaking tank could not possibly be considered "sudden" "because the release of by-product from [the tank] was not unexpected by Upjohn." *Id.* at 209, 476 N.W.2d 392. "Since the release of chemical by-product was not unexpected, as a matter of law it cannot be 'sudden and accidental.' Therefore, the pollution exclusion clause does apply, and the Upjohn Company is not entitled to coverage under [the insurance] policy." *Id.* at 216–217, 476 N.W.2d 392.

*Protective National Insurance Company v. The City of Woodhaven* (Defendants' Exhibit C)

Defendant municipality sprayed pesticides into the air as part of a municipal insect control program. A third party brought an action against the city for damages resulting from exposure to the pesticides. The City sought coverage under its insurance policy with plaintiff, Protective National.

The Supreme Court held that the policy did not impose on Protective National a duty to indemnify or defend Woodhaven, because the pollution exclusion clause applied to the situation.

> The discharge, dispersal, release, or escape of irritants, contaminants, or pollutants to which the pollution exclusion refers is that discharged, dispersed, released, or permitted to escape *into* the atmosphere. Likewise, the exception to the exclusion does not apply unless *such* discharge, dispersal, release, or escape to which both the exclusion and the exception refer is the initial discharge, dispersal, release, or escape *into* the atmosphere and not the subsequent migration.... [S]ince the release of the pesticide by Woodhaven into the atmosphere was intentional, it cannot, as a matter of law, be accidental.

*Id.* 438 Mich. at 161–162, 476 N.W.2d 374.

*Polkow v. Citizens Insurance Company of America* (Plaintiff's Exhibit D)

Plaintiff was in the business of collecting used oil and selling it to processors. The oil was kept in underground tanks on plaintiff's property before delivery to processors. The Michigan Department of Natural Resources began to suspect that plaintiff's business was the source of contamination of groundwater. The Department of Natural Resources ordered plaintiff to undertake a hydrogeological investigation of his property and to remove the source of the contamination, including underground tanks and tainted oil. Plaintiff contacted defendant and demanded coverage of the cost of defending against the DNR charges and indemnification for the cost of the studies. Defendant denied coverage, citing the pollution exclusion clause in plaintiff's policy.

The Court held that the proper focus of its examination was "not whether the contamination or damage is 'sudden and accidental' but whether the release is 'sudden and accidental.'" At 438 Mich. at 186, 476 N.W.2d 382. The Court held that the lower court had improperly disposed of the case on summary disposition, and remanded the case for further proceedings. There had been no determination of whether the contamination came from leaking tanks or from ground spillage. "[W]ithout proof of the source of the discharge, the court cannot determine whether the discharge falls within the sudden and accidental exception to the exclusion clause. This uncertainty creates doubt regarding coverage." *Id.* 180, 476 N.W.2d 382.

*Position of the Parties*

Royal argues that in light of the Michigan court's interpretation of the pollution exclusion clause, as a matter of law it cannot be found responsible for covering plaintiff for cleanup at the Otisville site. Royal insists that under Michigan law, if the Court finds that the discharge of waste was *either* non-sudden or non-accidental, the inquiry ends and Royal is entitled to summary judgment. Defendants insist that such a finding is supported in this case by the undisputable facts contained in the record of the motion for summary judgment. Defendants' Memorandum at 10.

As to suddenness, they point out that "[plaintiff's] waste was not released quickly, abruptly or without warning into the environment at [the dump]; rather, it was released into the environment over a period of several years, in the course of a process which was gradual, long term and nonsudden." *Id.* at 12. On the question of whether the discharge was accidental, they argue that "[t]he uncontested record facts in this case confirm that [plaintiff's] waste was routinely and intentionally discharged into the environment at FWD." *Id.* at 13.

Plaintiff argues that a determination of coverage under the sudden and accidental exception has to focus not on the release of waste into containment, but on how the waste was released into the environment. Plaintiff contends that defendants have not established how the waste got into the environment, and therefore that defendants should be denied summary judgment. Plaintiff also argues that it is entitled to summary judgment on the issue of defendants' duty to defend plaintiff, at least until it is shown that no coverage is possible under the policy. Plaintiff's Memorandum at 10 (citing *Polkow*, 438 Mich. at 176, 476 N.W.2d 382).

The Court concludes that reargument and summary judgment in defendants' favor is the inescapable result of the interpretation of the pollution exclusion announced in *Upjohn*, *City of Woodhaven*, and *Polkow*. The parties do not dispute, and the record clearly indicates that a waste hauler employed by plaintiff deposited waste into unlined earthen lagoons at the site. The record also indicates that the waste was not artificially contained, as in *Upjohn*, but that it was dumped into earthen pits at the site. While plaintiff has recently attempted to make an issue out of whether it has conceded that the pits were lined or unlined, plaintiff failed to put any evidence into the record to prove that the lagoons were lined, and never disputed indications in the record that the pits were unlined.

At argument and in written submissions, plaintiff has endeavored to convince the Court that this case is similar to *Polkow*. Plaintiff argues that the precise method by which waste traceable to Heileman's predecessor entered the environment is not established in the record, preventing a determination of whether the discharge was sudden and accidental, and rendering summary judgment inappropriate. The Court disagrees. In *Polkow*, the court noted that there were several ways in which waste could have been released from the control of the plaintiff, an event which resulted ultimately in the contamination of the groundwater. *Polkow*, at 180, 476 N.W.2d 382. In the instant matter, in contrast, there is no dispute that waste from Heileman's predecessor was dumped directly into the earthen lagoons at the Otisville site. Common sense indicates that the dumping of waste directly into the earth at the Otisville site is more like the scenario considered in *Upjohn* than the facts addressed in *Polkow*.

In sum, *Woodhaven* teaches that the Court is to focus on the initial discharge of waste into the environment; here, that discharge was the dumping of waste directly into pits in the earth at the Otisville dump. The record indicates that the discharge was not sudden, as that word was defined in *Upjohn*, because waste was deposited repeatedly over an extended period of time. The record also indicates that the discharge was not accidental because the waste was deliberately dumped into the earth. Accordingly, the pollution exclusion precludes coverage in this case.

### Conclusion

For the reasons set forth above, defendants' motion to reargue is granted, and the underlying motion for summary judgment is granted in favor of defendants. This action is ordered removed from the active docket of this Court.

SO ORDERED.