Frederick GILBERT, Plaintiff,

v.

Donald SELSKY, Director of Special Housing, New York State Department of Correctional Services, Robert Smith, Captain, Eastern Correctional Facility, and W.J. Wilhelm, Deputy Superintendent, Sullivan Correctional Facility, Defendants.

No. 91 Civ. 8489 (JES).

United States District Court, S.D. New York.

Sept. 9, 1994.

As Amended Nunc Pro Tunc Sept. 29, 1994.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff; John J.P. Howley, Jennifer Tafet, of counsel.

Robert Abrams, New York City, Atty. Gen. of the State of N.Y. (Ellen J. Fried, Marilyn T. Trautfield, Asst. Attys. Gen., of counsel), for Donald Selsky.

## OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 42 U.S.C. § 1983, plaintiff Frederick Gilbert brings this action claiming that his prison disciplinary hearing, held at Eastern Correctional Facility ("Eastern"), was conducted in violation of his rights under the Due Process Clause of the Fourteenth Amendment. The defendants are Donald Selsky, the Director of Special Housing and the Coordinator of the Inmate Disciplinary Program for the New York State Department of Correctional Services ("NY DOCS"), W.J. Wilhelm, a deputy superintendent at Eastern, and Robert Smith, a captain at Eastern.[1] Plaintiff claims, *inter alia*, that Smith failed to independently assess the credibility of two confidential informants, that Smith failed to call certain requested witnesses, that Smith's determination was not supported by some evidence, and that Wilhelm and Selsky were personally involved in these constitutional violations. The case was tried before the Court upon stipulated facts. For the reasons that follow, judgment is hereby granted to the plaintiff.

## BACKGROUND

By virtue of the joint Pre–Trial Order submitted by the parties, the following facts are undisputed.[2]

---

**1.** In his original complaint and amended complaint, Gilbert named Thomas A. Coughlin, Commissioner of the NY DOCS and Robert Kuhlmann, Superintendent of Sullivan, as defendants. On March 24, 1992, however, Gilbert voluntarily dismissed the actions against these defendants, without prejudice.

**2.** It is well-established that a party "is bound by the statement of facts in the pre-trial order,

At all times pertinent to this action, plaintiff Frederick Gilbert was an inmate in the custody of the NYDOCS, confined at Eastern. Joint Pre–Trial Order ("PTO") ¶ 1. During the period of July 21 through July 30, 1989, the Alcohol and Substance Abuse Training ("ASAT") Program at Eastern was closed. *Id.* ¶ 17. On or about July 21, 1989, Marilyn Demorest, the civilian coordinator of the ASAT Program, had accounted for the program inventory, including cassette players and A/C adapters. *Id.* ¶¶ 15, 17. When the ASAT Program reopened on July 31, 1989, Demorest discovered that 25 cassette players and 37 A/C adapters were missing from the ASAT Program room. *Id.* ¶ 13.

On August 17, 1989, Gilbert was served with an Inmate Misbehavior Report ("IMR") prepared by Sergeant Joseph Beatty. PTO ¶ 3. The IMR, based entirely on confidential sources, alleged that Gilbert had stolen the cassette players and adapters from the ASAT Program room.[3] *See* Defendant's Notice of Motion to Dismiss ("Def.Mtn.") Exh. B; PTO ¶¶ 3–4. Gilbert pleaded not guilty to all charges. PTO ¶ 6. However, as a result of the allegations contained in the IMR, Gilbert was transferred to the Sullivan Correctional Facility ("Sullivan"). *Id.* ¶ 2. On August 23, 1989, defendant Robert Smith commenced a Tier III Superintendent's Hearing at Sullivan.[4] *Id.* ¶ 5. At the hearing, Smith heard testimony from Beatty, Demorest and Gilbert. *See* Def.Mtn.Exh. A. While neither Beatty nor Demorest possessed any personal knowledge concerning the theft, they testified that two confidential informants had implicated Gilbert in the incident.[5] PTO ¶¶ 35, 38–40.

According to both Beatty and Demorest, the first informant had provided reliable information in the past.[6] PTO ¶¶ 41, 47. According to Beatty, the first informant was caught with one of the stolen cassette players. *Id.* ¶ 42. When questioned by Beatty, the first informant stated that an unidentified prison staff member had provided the stolen goods. *Id.* At that point, the first informant offered to "find out who is behind all of this." *Id.* ¶ 43. Beatty did not pursue this issue any further, and the first informant was never charged with possession of the stolen property. *Id.* ¶¶ 42, 46. In any event, the first informant lacked personal knowledge regarding the theft, and based his alle-

---

which was stipulated to by his attorney." *Mull v. Ford Motor Co.*, 368 F.2d 713, 715 (2d Cir. 1966).

**3.** The IMR did not disclose the number of confidential sources, or otherwise identify them. PTO ¶ 29–30. The IMR did not indicate whether any of the sources possessed personal knowledge concerning the incident, or were otherwise involved therein. *Id.* ¶ 31, 33. In addition, the IMR did not indicate whether any of the sources had provided reliable information in the past. *Id.* ¶ 32. In short, the IMR did not adequately inform Gilbert of the evidence against him. *See Sostre v. McGinnis*, 442 F.2d 178, 198 (2d Cir. 1971) (en banc), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972).

**4.** As Gilbert points out, due process clearly requires an impartial hearing officer, not likely to predetermine the outcome of a case. *See Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989). However, because the prison environment exacts special considerations, due process must accommodate the existence of conflicts of interest. *Id.* In short, a prison hearing officer need not possess the level of impartiality of an ordinary judicial official. *Id.*

Although Smith was responsible for security at the Eastern facility, PTO ¶ 9, he neither witnessed the relevant events nor participated in the investigation thereof. Thus, because Gilbert has set forth nothing "more than conclusory allegations of bias and prejudgment," *Francis*, 891 F.2d at 47, Smith did not violate Gilbert's due process rights by presiding at the hearing. *See Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987); *see also Simard v. Board of Education*, 473 F.2d 988, 992–93 (2d Cir.1973).

**5.** At Smith's direction, Gilbert was removed from the hearing room during certain testimony regarding the confidential informants. *See* Deft. Mtn.Exh. A; PTO ¶ 38–39. To the extent that Smith took testimony outside of Gilbert's presence, he did not violate any requirement of due process. *See Baxter v. Palmigiano*, 425 U.S. 308, 322, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976); *Bolden*, 810 F.2d at 358.

**6.** The first confidential informant had provided Beatty with reliable information on approximately twenty occasions in the past. PTO ¶ 41. The

gation entirely on a conversation with the second informant. *Id.* ¶¶ 43–44, 48–49.

According to the second informant, Gilbert said that an unidentified correction officer had allowed him into the ASAT Program room during the ten-day period that it was closed. PTO ¶ 54. Due to inconsistent testimony provided by Beatty, it is unclear whether the second informant claimed to have observed Gilbert steal the goods.[7] *Id.* ¶¶ 55–58. However, even assuming arguendo that Gilbert's statements to that informant, since they constituted admissions, were an adequate substitute for personal knowledge, the fact remains that the second informant had never provided Beatty or Demorest with reliable information in the past. *Id.* ¶¶ 51–52. In fact, although the second informant appeared to be "straightforward and quite sincere," he was "virtually unknown" to Beatty. *Id.* ¶¶ 50–51.

At the conclusion of the hearing, Smith found Gilbert guilty. PTO ¶ 26. In a Hearing Disposition Rendered Form, Smith indicated that his determination was based upon the IMR, and testimony provided by Beatty and Demorest. *See* Def.Mtn.Exh. E; PTO ¶ 27. Smith sentenced Gilbert to 90 days in keeplock, 90 days loss of good time, 90 days loss of all privileges, and ordered payment of restitution in the amount of $800.00.[8] PTO ¶¶ 95–96. On August 30, 1989, Gilbert filed

an appeal, but defendant Donald Selsky affirmed Smith's determination. *Id.* ¶¶ 136–39. On October 23, 1989, Gilbert filed a discretionary appeal, but defendant W.J. Wilhelm also affirmed Smith's determination. *Id.* ¶¶ 141–42. However, after Gilbert commenced an Article 78 proceeding to challenge the hearing disposition, the matter was settled. PTO ¶¶ 143–44. Pursuant to such settlement, the State agreed to expunge the disciplinary charges from Gilbert's record and to return the garnished funds to his inmate account. *Id.* ¶ 144.

On December 18, 1991, Gilbert commenced the instant action, pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his rights under the Due Process Clause of the Fourteenth Amendment. Gilbert claims that Smith failed to independently assess the credibility of the two confidential informants,[9] that Smith failed to call certain witnesses, and that Smith's determination was not supported by some evidence. Gilbert further claims that Selsky and Wilhelm ratified these constitutional violations, and that Selsky otherwise negligently trained and supervised Smith. In response, defendants contest the merits of these due process claims, and assert defenses of absolute immunity, qualified immunity and administrative reversal.[10]

---

first informant had also provided Demorest with reliable information in the past. *Id.* ¶ 47.

7. During the hearing, Smith asked Beatty whether the second informant actually observed Gilbert steal the cassette players and adapters. PTO ¶ 55. In response, Beatty testified that the second informant possessed no personal knowledge. *Id.*

After a short adjournment, Smith repeated the question. PTO ¶ 56. At that point, Beatty testified that the second informant indeed possessed personal knowledge. *Id.* ¶ 57. Surprisingly, Smith did not question Beatty about his prior inconsistent testimony, and Beatty offered no explanation. *Id.* ¶ 58.

8. Gilbert was confined in keeplock, PTO ¶ 96, a form of solitary confinement where a prisoner is "confined to his own cell and deprived of almost all contact with the rest of the prison population and participation in the normal routine of the institution ..." *McKinnon v. Patterson,* 568 F.2d 930, 936 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). As a result, he was denied the use of his inmate

account, denied the opportunity to participate in any inmate programs and deprived of all other visitation rights and privileges, including conjugal "trailer visits" with his wife. PTO ¶ 96.

9. At the time of the hearing, NY DOCS internal guidelines suggested that, when possible, a hearing officer should personally interview confidential informants. PTO ¶ 67–68. Where a personal interview was not feasible, the guidelines suggested that a hearing officer should make an independent assessment of reliability based upon detailed information. *Id.* ¶ 68–69. However, a violation of state procedural requirements is insufficient to state a claim under section 1983. *See Bolden,* 810 F.2d at 358; *Cofone v. Manson,* 594 F.2d 934, 938 (2d Cir.1979).

10. At oral argument, defendants contended that, based upon *Young v. Hoffman,* 970 F.2d 1154 (2d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 115, 126 L.Ed.2d 80 (1993), the Article 78 settlement constituted an administrative reversal which cured any constitutional violations in this case.

## DISCUSSION

### I. ABSOLUTE IMMUNITY

■ Defendant Selsky contends that he is entitled to absolute immunity in his capacity as an appellate officer. Absolute quasi-judicial immunity has been extended to members of the executive branch "who perform functions closely associated with the judicial process." *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985). In general, the Supreme Court has been "quite sparing" in its recognition of absolute immunity, *Burns v. Reed,* 500 U.S. 478, 487, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991), and qualified immunity remains the standard by which executive branch officers are normally measured. *See Buckley v. Fitzsimmons,* — U.S. —, —, 113 S.Ct. 2606, 2621, 125 L.Ed.2d 209 (1993). Thus, while the Supreme Court has afforded absolute immunity to federal hearing officers and administrative law judges, *see Butz v. Economou,* 438 U.S. 478, 513–14, 98 S.Ct. 2894, 2914–15, 57 L.Ed.2d 895 (1978), it has declined to extend such protection to a prison disciplinary board. *See Cleavinger,* 474 U.S. at 203–05, 106 S.Ct. at 501–03; *see also Zavaro v. Coughlin,* 970 F.2d 1148, 1153 n. 2 (2d Cir.1992) ("absolute immunity does not extend to officers presiding at prison disciplinary hearings, in the absence of the procedural safeguards identified by the Supreme Court in *Butz* ").

■ In seeking absolute immunity, a government official, like Selsky, bears a heavy burden of demonstrating that overriding public policy considerations warrant such exceptional protection. *See Forrester v.*

*White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). As a practical matter, because Selsky is responsible for the training of hearing officers, such as Smith, a particularly strong showing is needed in this case. Nonetheless, Selsky has failed to demonstrate that any of the factors set forth in *Butz* require that he be afforded absolute immunity in this case.[11] *See also United States ex rel. Larkins v. Oswald,* 510 F.2d 583, 588–89 (2d Cir.1975); *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

The Court therefore concludes that Selsky is not entitled to absolute immunity. *See Moye v. Selsky,* 826 F.Supp. 712, 718–23 (S.D.N.Y.1993); *but see Bolanos v. Coughlin,* No. 91–5330, slip op. at 46–53 (S.D.N.Y. Oct. 15, 1993); *Parkinson v. Employee Assistant, DCF,* No. 91–7401, 1993 WL 118451, at *2–5 (S.D.N.Y. Apr. 12, 1993); *Pacheco v. Kihl,* No. 90–549, 1991 WL 629846, at *3–4 (S.D.N.Y. Dec. 17, 1991).

### II. QUALIFIED IMMUNITY

Under the doctrine of qualified immunity, government officials are shielded from liability provided that their actions are discretionary in nature and do not violate a clearly established statutory or constitutional right of which a reasonable official comparably placed would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Yalkut v. Gemignani,* 873 F.2d 31, 35 (2d Cir.1989). Thus, in determining whether the rights at issue were clearly established in July of 1989, the Court must consider three factors:

(1) whether the right in question was defined with "reasonable specificity"; (2)

---

In two recent decisions, however, the Second Circuit has held that, once an inmate begins to serve a punitive sentence, prison officials may be held liable for constitutional violations occurring at a disciplinary hearing. *See Walker v. Bates,* 23 F.3d 652, 658–59 (2d Cir.1994); *Mays v. Mahoney,* 23 F.3d 660, 662 (2d Cir.1994). Moreover, in 1985, the Second Circuit held that "a post-deprivation hearing, by way of an Article 78 proceeding or an action for damages in the Court of Claims is inadequate, by definition, to meet the requirements of due process." *Patterson v. Coughlin,* 761 F.2d 886, 893 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). In view of the applicable case law in this circuit, the Court concludes that the Article

78 settlement did not cure the alleged constitutional violations in this case.

11. In assessing whether a government official is entitled to absolute immunity, the Supreme Court has applied a so-called functional approach involving the following factors: the need to assure that the individual can perform his functions without harassment or intimidation; the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; insulation from political influence; the importance of precedent; the adversary nature of the process; and the correctability of error on appeal. *Cleavinger,* 474 U.S. at 201–202, 106 S.Ct. at 500–501 (citing *Butz,* 438 U.S. at 512–14, 98 S.Ct. at 2913–15).

whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

See *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

■ Applying this standard to the present case, the Court concludes that the right to call witnesses and the right to have a disciplinary hearing supported by some evidence were clearly established in 1989, when the hearing occurred. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), decided in 1974, the Supreme Court clearly held that an inmate is entitled to call witnesses, unless "to do so [would] be unduly hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. at 2979. In *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), decided in 1985, the Supreme Court "left no doubt that due process requires 'that there be some evidence to support the findings made in the disciplinary hearing.'" *Zavaro,* 970 F.2d at 1153 (quoting *Hill,* 472 U.S. at 457, 105 S.Ct. at 2775).

However, while numerous circuits have held that there must be an independent assessment of credibility, *see, e.g., Taylor v. Wallace,* 931 F.2d 698, 702–03 (10th Cir. 1991); *Hensley v. Wilson,* 850 F.2d 269, 276–77 (6th Cir.1988); *Henderson v. Carlson,* 812 F.2d 874, 879–80 (3d Cir.), *cert. denied,* 484 U.S. 837, 108 S.Ct. 120, 98 L.Ed.2d 79 (1987); *Mendoza v. Miller,* 779 F.2d 1287, 1295–96 (7th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *Kyle v. Hanberry,* 677 F.2d 1386, 1392 (11th Cir. 1982), neither the Supreme Court nor the Second Circuit have yet addressed the issue.[12] Thus, while supported by some case authority, the right to an independent assessment of credibility of confidential informants

was not clearly established in 1989, when the hearing in this case occurred. *See Russell,* 15 F.3d at 223–24; *see also Richardson,* 5 F.3d at 624 (right to independent assessment not clearly established in 1985); *Gittens v. Sullivan,* 720 F.Supp. 40, 43–44 (S.D.N.Y. 1989) (right to independent assessment not clearly established in 1988).

In sum, defendants are entitled to qualified immunity with respect to the claim that Smith violated Gilbert's due process rights by failing to make an independent assessment of the credibility of the two confidential informants. However, as set forth above, defendants are not entitled to qualified immunity with respect to all of Gilbert's claims.

## III. DUE PROCESS CLAIMS

### A. *Some Evidence*

■ In *Hill,* the Supreme Court held that the imposition of punishment does not comport with the minimum requirements of due process, unless the disciplinary determination is supported by some evidence in the record. *Hill,* 472 U.S. at 454–55, 105 S.Ct. at 2773–74. By requiring some evidence, the Court explained, judicial review may "prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." *Id.* at 455, 105 S.Ct. at 2774. On the other hand, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* at 456, 105 S.Ct. at 2774.

■ The ASAT Program room is located in the academic area of the school building, which is situated at one end of the Eastern facility. PTO ¶ 7. In order to access this area, an inmate must pass through a series of security posts and locked gates. *Id.* ¶ 8. According to the program callout sheets, which record inmate movements within the facility, Gilbert did not enter the ASAT Pro-

---

**12.** The Second Circuit has held that there must be "some evidence in the record of the informant's reliability," *Richardson v. Selsky,* 5 F.3d 616, 624 (2d Cir.1993), and has "clearly implied" that there must be an independent assessment of credibility. *Id.* at 622 (citing *Zavaro,* 970 F.2d at

1153–54). However, even at present, there are "no Supreme Court nor Second Circuit cases that clearly establish the procedures required to make an independent assessment of a witness's credibility." *Russell v. Scully,* 15 F.3d 219, 223 (2d Cir.1993).

gram room during the ten days prior to the theft. *Id.* ¶ 21.[13] In short, there is no evidence that Gilbert entered the academic area, or the ASAT Program Room, during the relevant period.

Moreover, although the ASAT Program was closed, it was utilized by other inmate programs. PTO ¶ 18. During that time, an electrician and several inmates were installing electrical outlets in an adjoining room, and the connecting door possessed no lock. *Id.* ¶ 19. Any of these inmates or workers could have stolen cassette players and adapters. In addition, a thorough search of Gilbert's cell, his inmate account and the prison package room revealed no evidence of the missing cassette players, cash or large amounts of cigarettes. *Id.* ¶¶ 23–25.

As in *Zavaro*, aside from the information provided by the second informant, whose reliability was unknown, there is no evidence suggesting any involvement by Gilbert. *See Zavaro*, 970 F.2d at 1153–54; PTO ¶¶ 23–25. The Court therefore concludes, especially in view of the circumstance noted above, that such hearsay evidence cannot constitute "some evidence" of Gilbert's guilt absent an objective foundation establishing reliability. *See Howard v. Wilkerson*, 768 F.Supp. 1002, 1007–08 (S.D.N.Y.1991); *Vasquez v. Coughlin*, 726 F.Supp. 466, 471 (S.D.N.Y.1989); *see also Wolfe v. Carlson*, 583 F.Supp. 977, 982 (S.D.N.Y.1984). Accordingly, the Court concludes that the evidence in the record failed to meet the "some evidence" standard, and that Smith's determination based upon that evidence violated Gilbert's rights under the Due Process Clause of the Fourteenth Amendment.

**B.** *Refusal to Call Witnesses*

 In *Wolff*, the Supreme Court held that an accused prisoner possesses a quali-

fied right to call witnesses and to present documentary evidence. *See Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979. While basic to a fair hearing, however, the right to call witnesses is necessarily circumscribed by the potential for interference with an institution correctional program. *See Ponte v. Real*, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985); *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979. Accordingly, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits" by refusing to call witnesses, "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2980.

 Prior to the hearing, Gilbert requested that Smith call a number of witnesses, such as the correction officer assigned to the Academic Area and the corrections officers assigned to his housing unit. PTO ¶¶ 78, 84. During the hearing, Gilbert requested that Smith call the correction officer who allegedly permitted him to enter the ASAT Program room. *Id.* ¶ 81. Gilbert also requested that the inmate clerks who worked in the ASAT Program, and had access to the stolen materials, be called. *Id.* ¶ 86. In a single witness denial form, Smith summarily denied each of Gilbert's requests based on irrelevance, while failing to enumerate any security or other institutional concerns. *See* Def.Mtn.Exh. D; PTO ¶¶ 88–89.[14]

The Court concludes that most, if not all, of these requested witnesses were highly relevant to a fair and informed determination in this case. For example, although Smith indicated that the correction officer who allegedly permitted Gilbert to enter the ASAT Program room was an irrelevant character wit-

---

13. At that time, correction officer Geisling was on duty in the Academic Area, near the ASAT Program room. PTO ¶ 22. Geisling did not recall observing Gilbert in the area during the ten days prior to the theft. *Id.* In addition, Gilbert testified that he did not enter the Academic Area or the ASAT Program room during that time. *Id.* ¶ 20.

14. In order to facilitate administrative and judicial review of the disciplinary determination, Smith was required to list all requested witnesses

on a Hearing Record Sheet ("HRS"). PTO ¶ 92–93. On the HRS completed for Gilbert's Tier III hearing, Smith failed to list any of the requested witnesses. *See* Def.Mtn.Exh. C; PTO ¶ 94. While due process may, at some point, require prison officials to state their reasons for refusing to call requested witnesses, such reasons need not "be placed in writing or otherwise exist as a part of the administrative record at the disciplinary hearing." *Ponte*, 471 U.S. at 492, 105 S.Ct. at 2194.

ness, *see* Def.Mtn.Exh. D; PTO ¶ 89, this correction officer allegedly participated in the alleged theft. Moreover, as stipulated by the defendants, the correction officers assigned to Gilbert's housing unit could establish Gilbert's whereabouts during the time when the theft took place. PTO ¶ 84. Finally, the inmate clerks who had access to the stolen materials could also have provided relevant information.

In short, the requested witnesses were clearly not irrelevant, and it has not been demonstrated that their testimony would have been "unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979; *see also Powell v. Coughlin*, 953 F.2d 744, 748–49 (2d Cir.1991). Therefore, by failing to call any of these requested witnesses, Smith violated Gilbert's rights under the Due Process Clause of the Fourteenth Amendment.

## IV. PERSONAL INVOLVEMENT—DEFENDANTS SELSKY AND WILHELM

■ As a prerequisite to recovery under section 1983, a plaintiff must demonstrate personal involvement by each defendant. *See McKinnon*, 568 F.2d at 934. As supervisory officials, defendants Selsky and Wilhelm contend that because they did not participate directly in the hearing, *see, e.g., Johnson v. Glick*, 481 F.2d 1028, 1033–34 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Sostre*, 442 F.2d at 205, they were not personally involved in the constitutional violations.

■ However, a supervisory official may be personally involved in numerous ways. If a supervisory official learns of a violation through a report or an appeal, but fails to remedy the wrong, that may constitute a sufficient basis for liability. *See, e.g., Oswald*, 510 F.2d at 589. Furthermore, if a supervisory official creates or maintains a policy or custom under which constitutional violations occur, sufficient personal involvement may exist. *See, e.g., McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir.1983); *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.). *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Duchesne v. Sugarman*,

566 F.2d 817, 830–31 (2d Cir.1977). Finally, if a supervisory official is grossly negligent in the management of subordinates who cause a constitutional violation to occur, he may liable for those violations. *See, e.g., Wright v. McMann*, 460 F.2d 126, 135 (2d Cir.1972); *c.f. Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

■ On administrative appeal, Selsky and Wilhelm each had the opportunity to remedy the constitutional violations committed by Smith, but failed to do so. On August 30, 1989, Gilbert filed an appeal, but Selsky affirmed Smith's determination. PTO ¶¶ 136–39. On October 23, 1989, Gilbert filed a discretionary appeal, but Wilhelm also affirmed Smith's determination. *Id.* ¶¶ 141–42. By failing to correct these violations, Selsky and Wilhelm were personally involved in the violations of Gilbert's rights under the Due Process Clause of the Fourteenth Amendment. *See Williams*, 781 F.2d at 324; *Oswald*, 510 F.2d at 589.

Moreover, as director of the DOCS' Central Office of Special Housing and Inmate Discipline, Selsky is responsible, in part, for the operation of the inmate disciplinary process, including the training of hearing officers. PTO ¶¶ 99–103. He is therefore properly responsible for the fact that there is no formal training manual, and that hearing officers are not required to attend formal training sessions prior to presiding over a disciplinary hearing, or at any time for that matter. *Id.* ¶¶ 104–105, 112–13. Indeed, it appears that Selsky is not even familiar with the training afforded hearing officers who preside over the approximately 100,000 Tier II and Tier III disciplinary hearings held annually. *Id.* ¶¶ 119–120. Accordingly, by totally failing to train Smith, Selsky was personally involved in the violations of Gilbert's rights under the Due Process Clause of the Fourteenth Amendment. *See Wright*, 460 F.2d at 134–35; *Williams*, 781 F.2d at 324; *c.f. Owens*, 601 F.2d at 1246.

## CONCLUSION

In sum, defendant Smith violated section 1983 by failing to adequately inform Gilbert

of the evidence against him, by failing to call any of the requested witnesses, and by rendering a disciplinary determination that was not supported by some evidence. Due to their appellate determinations, and Selsky's total failure to train Smith, defendants Selsky and Wilhelm were personally involved in these constitutional violations.

For all of the foregoing reasons, the Clerk of the Court is directed to enter judgment in favor of plaintiff. The parties are hereby directed to appear for a Pre–Trial Conference on October 14, 1994 at 10:30 a.m. in Courtroom 705.

It is **SO ORDERED.**