**Raymond T. ROURKE, Plaintiff,**

v.

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES; George Cooper, Deputy Superintendent of Riverview Correctional Facility, in his Official and Individual Capacities, Wayne Barkley, Superintendent of Riverview Correctional Facility, New York State Department of Correctional Services, in his Official and Individual Capacities; William Costello, Deputy Superintendent of Security at Riverview Correctional Facility, New York State Department of Correctional Services, in his**

Individual and Official Capacities; and Thomas Testo, Special Assistant to the Commissioner for the Labor Relations, New York State Department of Correctional Services, in his Official and Individual Capacities, Defendants.

No. 94–CV–0735.

United States District Court,
N.D. New York.

Nov. 27, 1995.

See also 159 Misc.2d 324, 603 N.Y.S.2d 647, and 201 A.D.2d 179, 615 N.Y.S.2d 470.

528

530

Dreyer, Boyajian & Tuttle, Albany, NY (Daniel J. Stewart, of counsel), for plaintiff.

Dennis C. Vacco, Office of Attorney General of State of New York Albany, NY (John S. Sherman, of counsel), for defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND & FACTS

Plaintiff, RAYMOND T. ROURKE, is a full-blooded native american indian, and a member of the Mohawk nation. In November 1989, the plaintiff became a corrections officer at Riverview Correctional Facility ("Riverview").

In 1991, the plaintiff stopped cutting his hair allegedly in accordance with the beliefs of the Longhouse religion, the traditional religion of the Mohawk indians. Corrections department Directive 3083 states that male correction officers' hair length may not exceed one-half inch below the top of the shirt collar. That same Directive 3083 permits female officers to grow their hair longer than males, provided that they arrange it so that it does not fall more than one-half inch below the top of the shirt collar. By April 1991, the plaintiff's hair had grown to an impermissible length. Sometime in the summer of 1991, Howard Maneely, then Deputy Superintendent of Security at Riverview, told the plaintiff to cut his hair. The plaintiff declined to do so and explained that his refusal was for religious reasons. The plaintiff was instructed to wear his hair in a ponytail.

The plaintiff wore his hair in that manner until September 25, 1992, approximately fourteen months. At that time, the new Deputy Superintendent of Security, WILLIAM COSTELLO, a defendant herein, gave the plaintiff verbal and written notice that he had to comply with the Directive and cut his hair. The plaintiff did not comply, and was given a notice of immediate suspension from duty without pay. On September 29, 1992, defendant THOMAS TESTO, the Special Assistant for Labor Relations, gave the plaintiff a written notice of dismissal.

The plaintiff appealed the dismissal through arbitration as provided in the collective bargaining agreement negotiated by his union. In addition, on January 22, 1993, the plaintiff commenced an Article 78 proceeding in New York State Supreme Court. The plaintiff sought to secure reinstatement and to obtain a judgment declaring that Directive 3083, as applied to the plaintiff, violated the New York state constitution.

On February 3, 1993, an arbitrator ruled that the plaintiff was not entitled to an exception from the hair length policy. The plaintiff was ruled to have disobeyed a superior. The arbitrator ordered him suspended for 21 days, reinstated to his position, and granted back pay.

On March 3, 1993, the plaintiff was again ordered to cut his hair, this time by a written order of the defendant GEORGE COOPER, the Deputy Superintendent of Riverview. Again, the plaintiff explained that he could not comply because of his religious beliefs. Defendant Cooper gave the plaintiff a written notice of suspension from duty without pay. On March 4, 1993, the plaintiff was dismissed. This time the dismissal was upheld. The arbitrator again found that the plaintiff had failed to obey an order. The suggestion of the arbitrator was that the plaintiff should have complied with the order and sought a remedy thereafter.

On August 9, 1993, a New York state Supreme Court held that the Directive governing hair length, as applied to the plaintiff, violated his New York state constitutional

right to free expression of his religion. The court reasoned that the plaintiff's refusal to comply with the orders was pursuant to a sincerely held religious belief, and that the State could impose restrictions only if justified by a compelling State interest.

The State appealed, and a unanimous Third Department affirmed the lower court ruling on July 28, 1994. The court found that the State had "not shown that any legitimate interest will be advanced by refusing to grant an exception." The plaintiff was reinstated to his position with back pay.

This case was commenced on June 8, 1994, and is brought pursuant to Title VII, 42 U.S.C. § 1983, and the Religious Freedom Restoration Act of 1993 (RFRA). The plaintiff has moved for partial summary judgment, for an order to compel and extend discovery, and for leave to file an amended complaint.

In support of an order for partial summary judgment, the plaintiff argues that certain issues should be precluded from consideration by this court, i.e., that the defendants must be collaterally estopped from relitigating certain issues, because they have already been decided by the courts of New York state. On that basis, the plaintiff argues that he is entitled to summary judgment as to certain findings of the state courts and as to liability pursuant to his Title VII claim.

The plaintiff also argues that pursuant to 42 U.S.C. § 1981a, he has been intentionally discriminated against. Accordingly, the plaintiff argues that this court should award compensatory and punitive damages.

The plaintiff argues that Directive 3083 violates the first amendment. More particularly, the plaintiff argues that he is entitled to summary judgment as to his "hybrid" first amendment claim, in that the Directive burdens the free exercise of the plaintiff's religious beliefs, and impinges upon his free speech and privacy rights, such that it must fail unless the State shows that it has a compelling interest.

The plaintiff also claims that the defendants should be held liable under the RFRA. The plaintiff argues that the RFRA creates a private cause of action and applies retroactively. Moreover, the plaintiff argues that as a matter of law the defendants cannot meet the compelling interest standard, and thus, must be granted summary judgment under the RFRA.

In addition to the contentions relating to the motion for partial summary judgment, the plaintiff argues that he should be permitted to amend his complaint to clarify that he is making a claim pursuant to 42 U.S.C. § 1981a. The plaintiff argues that granting such relief will result in no prejudice to the defendants.

Finally, the plaintiff seeks an order compelling the defendants to answer interrogatories, and granting an extension to the discovery time period.

The court will now examine the points of counsel.

## II. DISCUSSION

### A. Standard For A Motion For Summary Judgment

The standard for granting a motion for summary judgment is well-settled. Summary judgment is appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the Court that, on the evidence before it, there is no genuine issue of material fact. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e). There must be more than a "metaphysical doubt as to the material facts." *Delaware & H.R. Co. v. Conrail,* 902 F.2d 174, 178 (2d Cir.1990) (*quoting, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "In considering a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'" *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 516 (2d Cir.1994) (*quoting,* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2721 at 40 (2d ed. 1983)).

However, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); *Azrielli,* 21 F.3d at 517. Any assessments of credibility and all choices between available inferences are matters to be left for a jury, not matters to be decided by the court on summary judgment. *Id.; See, e.g.,* Fed. R.Civ.P. 56(e), 1963 Advisory Committee Note; *Agosto v. Immigration and Naturalization Service,* 436 U.S. 748, 756, 98 S.Ct. 2081, 2086–87, 56 L.Ed.2d 677 (1978); *Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 472–73, 82 S.Ct. 486, 490–91, 7 L.Ed.2d 458 (1962); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Centronics Financial Corp. v. El Conquistador Hotel Corp.,* 573 F.2d 779, 782 (2d Cir.1978); 6 Moore's Federal Practice P 56.02 at 56–45 (2d ed. 1993). "Only when reasonable minds could not differ as to the import of the evidence is summary judgement proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). It is with the foregoing standards in mind that the Court turns to the issues presented.

### B. Collateral Estoppel

The plaintiff argues that certain factual findings made by the state court in prior proceedings between these parties, and relating to the same incidents at issue in this proceeding, should be binding on this court. Accordingly, the plaintiff asserts that the defendants may not relitigate those factual issues in this case, and summary judgment should be entered for the plaintiff. The defendants contest that assertion.

■ Notwithstanding the fact that the plaintiff fails to set forth and apply a specific standard relating to the preclusive doctrine of *res judicata,* or its sub-species, collateral estoppel, the court determines that the plaintiff intends to invoke the doctrine of collateral estoppel, and will examine the plaintiff's contentions accordingly. "Different rules and restrictions apply to each doctrine, and although some courts [and parties] fail to distinguish between the two, (citation omit-

ted), it is important in this case to be cognizant of their distinctiveness." *Burgos v. Hopkins,* 14 F.3d 787 (2d Cir.1994).

■ The full faith and credit clause of the United States Constitution compels federal courts to give the same preclusive effect to a state court judgment as would be given in the state in which it was rendered. *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *see,* 28 U.S.C. § 1738. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The leading New York Court of Appeals opinion states that "collateral estoppel ... precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984) (citations omitted). "[T]he issue must have been material to the first action or proceeding and essential to the determination therein, (citations omitted), and it must be the point actually to be determined in the second action or proceeding such that 'a different judgment in the second would destroy or impair rights or interests established by the first.'" *Ryan,* 62 N.Y.2d at 502, 478 N.Y.S.2d at 826, 467 N.E.2d at 490 (*quoting, Schuylkill Fuel Corp. v. Nieberg Realty Corp.,* 250 N.Y. 304, 307, 165 N.E. 456 [Cardozo, Ch. J.]).

■ In this case it is the plaintiff who seeks to assert the doctrine. The defendants may defeat the application of collateral estoppel if they can show that they did not have a "full and fair opportunity ... to contest the decision now said to be controlling ..." *Id.* "Among the specific factors to be considered are the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence

and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." 62 N.Y.2d at 502, 478 N.Y.S.2d at 827, 467 N.E.2d at 491.

■■■ The plaintiff herein prevailed in an Article 78 proceeding, in New York supreme court, and now seeks to invoke the doctrine of collateral estoppel offensively to preclude the defendants from "relitigating" certain issues allegedly decided in the Article 78 proceeding, and to obtain summary judgment as to the 42 U.S.C. § 1983, Title VII, and RFRA claims. As to the Title VII and RFRA claims, it is clear that there is no absolute bar to the application of collateral estoppel. As to the claim brought pursuant to 42 U.S.C. § 1983, the defendants argue that such a bar exists. The court will first consider the applicability of collateral estoppel to a 42 U.S.C. § 1983 action in federal court, and then examine its applicability to this case as a whole.

### 1. Preclusion As To 42 U.S.C. § 1983

■■■ Under New York law, *res judicata* does not bar the plaintiff from bringing a 42 U.S.C. § 1983 claim in federal court after a determination by the New York court in an Article 78 proceeding. *Davidson v. Capuano,* 792 F.2d 275, 278–80 (2d Cir.1986). Collateral estoppel, however, may preclude relitigation of issues actually decided. *See Burgos v. Hopkins,* 14 F.3d 787 (2d Cir. 1994). For collateral estoppel to apply, "(1) '[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action,' and (2) 'there must have been a full and fair opportunity to contest the decision now said to be controlling.' " *Id.,* at 792 (*quoting, Schwartz v. Public Administrator,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725 (1969)).

The defendants would have this court refuse to apply the doctrine of collateral estoppel to a plaintiff bringing a 42 U.S.C. § 1983 action in federal court after having prevailed on a similar claim in a New York state Article 78 proceeding. In support of this

contention, the defendants cite *Gutierrez v. Coughlin*[1], and several of its progeny. The plaintiff attempts to distinguish *Gutierrez.*

Although the analysis in *Gutierrez* is somewhat slight, this court does not read *Gutierrez* to have set forth an inflexible rule. Rather, *Gutierrez* applied the standard set forth above, and determined that the facts of that case did not warrant the application of collateral estoppel. *Gutierrez* highlighted the limited remedies available in an Article 78 proceeding *vis a vis* a federal action pursuant to 42 U.S.C. § 1983, the apparent lack of incentive to litigate, and the limitation on defenses that could have been raised. *See* 841 F.2d at 486. Accordingly, this court must examine the record in this case and determine the applicability of the doctrine, giving due consideration to the factors set forth above.

### 2. Identity of Issues

■■■ The plaintiff has the initial burden of showing that the issues decided in the prior proceeding were the same as those presented in the present action, that the resolution of those issues was necessary for the resolution of the prior proceeding, and that the issues are material to the present action. *See Ryan,* 62 N.Y.2d at 502, 478 N.Y.S.2d at 827, 467 N.E.2d at 491. Accordingly, the court must first determine what was decided by the state court, and then examine the contentions of the plaintiff.

■■■ The New York Appellate Division, Third Department, in a decision dated July 28, 1994, upheld a lower court decision that held that the New York Department of Correctional Services's actions of enforcing a hair-length policy against the plaintiff " . . . were violative of [plaintiff's] right, under the NY Constitution, to the free exercise of his religion . . ." Opinion and Order, N.Y.App. Div. at 3 (3d Dep't July 28, 1994). As to the merits of the plaintiff's claim, the court agreed with the lower court which " . . . found [plaintiff's] settled religious beliefs [as to the importance of not cutting one's hair] to be sincere . . ." Opinion and Order at 4. The court also held that "[c]onstraining [plaintiff] to choose between following the precepts of

---

1. 841 F.2d 484 (2d Cir.1988).

his religion, as he interprets them, and working as a state corrections officer substantially encumbers his right to freely practice his religion." *Id.* For the State defendants (respondents therein)[2] to overcome placing a burden on the plaintiff's religious freedom, they had to show a "... legitimate State interest that outweighs the negative impact ..." on that freedom. *Id.* After examining the considerable number of arguments set forth by the State respondents (defendants herein), the court expressly held that "... the [defendants] have simply not shown that any legitimate interest will be advanced by refusing to grant [plaintiff] an exemption from the hair length policy ..." *Id.*, at 4–5.

Based on the foregoing, the court finds that the New York courts determined necessarily that: (1) the plaintiff holds a sincere "religious belief in the need to keep his hair long." *Id.*, at 3; (2) the defendants refused to permit the plaintiff to wear his hair longer than set forth in the Directive at issue, *Id.*, at 2; (3) such refusal substantially encumbered the plaintiff's right to freely practice his religion; and (4) the defendants simply did not show *any* legitimate state interest that would be advanced by refusing to grant the plaintiff a hair length exception. *Id.*, at 4–5. These findings were necessary to the determination of the state constitutional issue. Each of these issues that is material to the determination of the claims before this court is properly precludable pursuant to collateral estoppel.

■■■ At a minimum, the findings that: (1) the plaintiff holds a sincere religious belief in the need to keep his hair long; and (2) the defendants refused to permit the plaintiff to wear his hair longer than set forth in Directive 3083, are necessary to a determination of the Title VII claim.[3] *See Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476 (2d Cir.1985) (setting forth elements for a prima facie claim under Title VII). The third necessary finding of the Appellate Division, that the refusal substantially encumbered the plaintiff's right to freely practice his chosen

religion, and the fourth, that the defendants did not show any legitimate state interest that would be advanced by refusing to grant the plaintiff a hair length exception, are material to this court's determination of whether the failure to grant an exception violated federal and/or constitutional law such that the plaintiff may recover under 42 U.S.C. § 1983. *See Employment Div., Dep't. of Human Resources*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Accordingly, the defendants will be estopped from relitigating these issues unless they can show that they did not have a full and fair opportunity to litigate these issues in the prior proceeding. *See Ryan*, 62 N.Y.2d at 502, 478 N.Y.S.2d at 826–827, 467 N.E.2d at 490–491; *Burgos*, 14 F.3d at 792 (*quoting, Schwartz v. Public Administrator*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725 (1969)).

## 3. Full and Fair Opportunity To Litigate

As set forth above, the court must engage in a multi-factor analysis to determine if the defendants had a full and fair opportunity to litigate the issues sought to be precluded by collateral estoppel in this action. The court may consider: (1) the nature of the forum and the importance of the claim in the prior litigation; (2) the incentive and initiative to litigate and the actual extent of litigation; (3) the competence and expertise of counsel; (4) the availability of new evidence; (5) the differences in the applicable law and (6) the foreseeability of future litigation. 62 N.Y.2d at 502, 478 N.Y.S.2d at 827, 467 N.E.2d at 491.

■■■ The court notes at the outset that the defendants have merely stated that they "have not had the full and fair opportunity to litigate the issues." Defendants' Memorandum of Law at 18. The defendants do not offer one single reason for this assertion, much less allege any facts or legal authority in support. Upon consideration of the facts and exhibits submitted to this court, it is clear that the defendants have, in fact fully

---

**2.** With the exception of George Cooper, who was not a party to the prior action.

**3.** The plaintiff has satisfied the administrative prerequisites to bringing a claim pursuant to Title VII in federal court, and has obtained a right to sue letter from the EEOC.

litigated the issues sought to be precluded, such that they should not now be permitted to relitigate those issues herein. The defendants were represented by the New York Attorney General's office in all prior proceedings. The defendants make no claim or showing of new evidence, or that there is a likelihood of future litigation. Moreover, judging from the fact that the State appealed the decision of the supreme court, compiled an extensive record on appeal, and contested numerous arguments before the state courts, it appears to this court that the defendants not only had a strong motivation to litigate, but did, in fact, litigate with zeal.

■ As to the type of forum in which the prior case was litigated, it was a special proceeding, pursuant to Article 78 of New York's Civil Practice Law and Rules. The leading second circuit case analyzing the implications of that type of proceeding is *Davidson v. Capuano, supra.* In *Davidson,* the court held that a prior civil rights determination in an Article 78 proceeding did not preclude later litigation of the *claim,* on the basis of *res judicata,* in a subsequent federal suit seeking relief pursuant to 42 U.S.C. § 1983. *Davidson,* 792 F.2d at 282. The *Davidson* court did not address the issue of issue preclusion, but did provide an extensive analysis of the limitations presented in an Article 78 proceeding. The *Davidson* court was particularly cognizant of the fact that certain remedies available in a federal civil rights action are not available in the Article 78 special proceeding. *See Id.,* at 278–79; *see also, Gutierrez,* 841 F.2d at 486. The *Gutierrez* court also pointed to certain defenses that are unavailable in an Article 78 proceeding, such as absolute or qualified immunity. *Gutierrez,* 841 F.2d at 486.

The differences highlighted by the *Davidson* and *Gutierrez* courts are not significant in the context of these proceedings, though. Since the plaintiff is not precluded from asserting any claims, the defendants are not foreclosed from asserting affirmative defenses to those claims, notwithstanding the fact that they will be precluded from relitigating certain issues. Moreover, the concerns of the *Davidson* court as to whether the Article 78 proceeding provided full relief on the issue of damages simply is not an issue, since clearly the plaintiff can assert a claim pursuant to 42 U.S.C. § 1983, and pursue all available remedies.

### C. Summary Judgment As To Title VII Claim

■ The plaintiff argues that because of the preclusive effects of collateral estoppel, the plaintiff should be granted summary judgment on the issue of liability under Title VII. The defendants' sole response is that the doctrine of collateral estoppel should not apply because the Title VII claim raised in the state court proceedings was dismissed. The defendants, however, misapprehend the nature of the application of collateral estoppel to subsequent claims.

■ The court first notes that the state supreme court dismissed the Title VII claim because the plaintiff, as of that time, had not complied with the procedural prerequisites to filing a civil action pursuant to Title VII. Opinion and Order, New York Supreme Court, Albany County at 3 (August 9, 1993). The state supreme court did not make any determination as to the merits of the Title VII claim. Moreover, the causes of action raised in the subsequent action need not be the same as those necessarily decided in the prior action for collateral estoppel to apply. *See Ryan,* 62 N.Y.2d at 501, 478 N.Y.S.2d at 826, 467 N.E.2d at 490; *see also, Burgos v. Hopkins,* 14 F.3d at 792 (citations omitted).

The complaint filed in this action alleges compliance with those procedural prerequisites, and the defendants do not contest such allegations. Accordingly, having raised no other defenses to this claim, and the court having determined that the doctrine of collateral estoppel applies to this action, the court will grant partial summary judgment on the issue of liability as to the Title VII claim if the plaintiff has satisfied the elements for such claim.

■ The initial burden is on the plaintiff to make out a prima facie case of discrimination, and upon making such a showing, the burden shifts to the employer to show that there is no reasonable accommodation that the employer can make without undue hard-

ship. *See Philbrook v. Ansonia Bd. of Educ.,* 757 F.2d 476, 481 (2d Cir.1985).

### 1. Prima Facie Case Under Title VII

██ " 'A plaintiff in a [Title VII] case makes out a prima facie case of religious discrimination by proving: (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement.' " *Philbrook,* 757 F.2d at 481 (*quoting, Turpen v. Missouri–Kansas–Texas Railroad, Co.,* 736 F.2d 1022, 1026 (5th Cir.1984) (citations omitted)). The record in this case coupled with the issues already decided show that the plaintiff has satisfied the prima facie standard.

██ In accordance with the court's determination as to the applicability of collateral estoppel, it is established that the plaintiff holds a sincere religious belief in the need to keep his hair long, which clearly conflicts with Directive 3083. Moreover, it is conclusively established that the plaintiff was disciplined for failing to comply with Directive 3083 and the orders of his superiors to cut his hair. As to the element of the claim requiring a showing that the plaintiff informed the employer of his religious beliefs, the record conclusively establishes that element.[4] Thus, the burden now shifts to the defendants "to show that [they] cannot reasonably accommodate the plaintiff without undue hardship on the conduct of" Riverview. *Philbrook,* 757 F.2d at 481.

### 2. Accommodation

The defendants have not presented the court with any opposition to the plaintiff's Title VII claim, other than to oppose the application of collateral estoppel. The claim set forth in the defendants' Memorandum of Law that the plaintiff was offered the opportunity to wear a wig as a reasonable accommodation is contradicted by the suspension and dismissal notices signed by the plaintiff. For these reasons, the court will grant the plaintiff's motion for partial summary judgment as to liability on plaintiff's Title VII claim. *See* Fed.R.Civ.Proc. 56(e).

### D. Eleventh Amendment Absolute Immunity

The defendants contend that the plaintiff's claims pursuant to 42 U.S.C. § 1983 and RFRA should be dismissed as against the Department of Corrections and the individual defendants, to the extent that the individuals are sued in their official capacities, because the Eleventh Amendment absolutely shields states from being sued by their own citizens in federal courts. The plaintiff argues that, although he is a New York citizen, and therefore generally precluded from suing his home state or state agencies in federal court, Title VII abrogates the Department of Corrections' claim of immunity. In addition, the plaintiff argues that, although he cannot seek money damages from the state of New York, he can seek a declaratory judgment as to the 42 U.S.C. § 1983 claim. With regard to the RFRA claim, the plaintiff argues that the language of the Act specifically abrogates the Eleventh Amendment.

██ The Eleventh Amendment acts as jurisdictional bar to federal actions against state governments. By its own terms, the amendment bars suits by citizens of another state, and by foreign nationals against a state. *See, e.g., Principality of Monaco v. Mississippi,* 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934); *Ex parte New York,* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921). By implication, the Eleventh Amendment bars suits by citizens of the defendant state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

██ For the purposes of the Eleventh Amendment, the "state" is defined as the state government and agencies of the government, but not its political subdivisions. *See, e.g., Maybanks v. Ingraham,* 378 F.Supp. 913 (E.D.Pa.1974) (municipal corporations not immune under Eleventh Amendment); *Lincoln County v. Luning,* 133 U.S. 529, 10 S.Ct.

---

**4.** Even defendants' counsel admits that, on at least one occasion, the plaintiff advised a defendant that he could not comply with the hair length requirement due to his sincerely held religious beliefs in the sanctity of long hair. *See* Defendants' Memorandum of Law at 14.

363, 33 L.Ed. 766 (1890) (county not immune under Eleventh Amendment). When a state officer is sued in his or her official capacity, the state itself is deemed to be the real party in interest, and the suit will be barred. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). This does not, however, foreclose suits against state officials in their individual capacity. *See Edelman, supra.*

▮▮▮ The Eleventh Amendment is not without limitations. Relevant to this action, the Congress may, in effect, carve out specific exceptions to the Eleventh Amendment's grant of absolute immunity from suit. The Congress, for example, may grant specific jurisdiction to the federal courts under § 5 of the Fourteenth Amendment. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Title VII abrogates Eleventh Amendment state government absolute immunity). The Supreme Court, however, requires that the Congress be quite clear as to whom a statute applies, i.e., if it actually subjects a state government to suit pursuant to that law. *See Parden v. Terminal R. of Alabama State Docks Dept.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). "Congress' power to abrogate a State's immunity means that in certain circumstances the unusual constitutional balance between the States and the Federal Government does not obtain." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 244, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). Because of the importance attached to that constitutional concern, Congress must "unequivocally express [its] intention" to upset that balance. *Id.* It is in light of the foregoing that the court now examines the applicability of the eleventh amendment to the plaintiff's claims herein.

### 1. Eleventh Amendment And Title VII

▮▮ It has been stated herein, and the defendants do not contest, that Congress unequivocally expressed its intention to abrogate the state government immunity provided by the eleventh amendment by the express language of Title VII. *See Fitz-*

patrick v. Bitzer, supra; see also, 42 U.S.C. § 2000e–2(a); 42 U.S.C. § 2000e(a) & (b). Accordingly, the defendants are not immune from suit with respect to the plaintiff's Title VII claim.

### 2. Eleventh Amendment And 42 U.S.C. § 1983

▮▮ As stated above, the parties do not contend that Congress did not abrogate the state government eleventh amendment immunity by its enactment of 42 U.S.C. § 1983. Notwithstanding the foregoing, the plaintiff argues that he may still maintain a 42 U.S.C. § 1983 claim against the defendants seeking declaratory relief. In support of this proposition, the plaintiff cites *Armstead v. Coler,* 914 F.2d 1464 (11th Cir.1990). That case does not discuss the relevant issue directly, and is not binding on this court. Nevertheless, the court finds that the plaintiff may maintain an action for declaratory relief pursuant to 42 U.S.C. § 1983.

▮▮▮ To the extent a state official is sued for damages in his or her official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state. *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993). However, whether state officials sued in their official capacities are entitled to eleventh amendment immunity depends also upon the relief sought in the complaint. As the Second Circuit has held, "[u]nder *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908),[5] acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters.,* 3 F.3d at 606; *see also, Neville v. Dearie,* 745 F.Supp. 99, 102 (N.D.N.Y.1990) ("[A]bsolute immunity does not extend to actions seeking injunctive relief concerning judges."); *see, Rochester v. White,* 503 F.2d 263 (3rd Cir.1974) (holding that eleventh amendment does not bar grant

---

**5.** 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714    (1908).

of prospective declaratory relief). Accordingly, the plaintiff may maintain the action for declaratory judgment pursuant to 42 U.S.C. § 1983 as against the individual defendants, insofar as the plaintiff seeks prospective relief.

### 3. Eleventh Amendment And RFRA

Consistent with the analysis set forth herein, the court finds that the RFRA *did* abrogate the eleventh amendment bar to suits against state governments and their agencies by citizens of the defendant state in federal court. The language of the statute clearly and unequivocally sets forth the intent of Congress to effectuate such a result.

The RFRA states in relevant part: "Government shall not substantially burden a person's exercise of religion ..." 42 U.S.C. § 2000bb–1(a). "[T]he term 'government' includes a[n] agency ... and official (or other person acting under color of state law) of ... a State ..." 42 U.S.C. § 2000bb–2(1). The language of the statute unequivocally sets forth Congress' intent to abrogate the eleventh amendment with respect to claims brought pursuant to this Act. "The purposes of this [Act] are—(1) to restore the compelling interest test ... and to guarantee its application in *all cases* where free exercise of religion is substantially burdened ..." 42 U.S.C. § 2000bb(b)(1). That language, particularly when read together with the definition of "government" in the Act, clearly supports a finding that the Congress intended to abrogate the eleventh amendment with respect to this Act.

The court's interpretation is supported by prior analogous case law. In *Fitzpatrick,* the Supreme Court considered the intent of Congress with respect to the eleventh amendment when it passed the 1972 amendment to Title VII, the Equal Employment Opportunity Act. Looking to the language of the statute, the Court held that Title VII abrogated the eleventh amendment. Without expressly mentioning the eleventh amendment, Congress changed the definition of "person" to include "governments, [and] governmental agencies ..." *See* 42 U.S.C. § 2000e(a). Moreover, the definition of "employee" was changed to expressly include those "... sub-ject to the civil service laws of a State government, governmental agency, or political subdivision." No less unequivocal a statement is expressed in the RFRA. Accordingly, the defendants are not immune from a claim brought pursuant to the RFRA.

### E. Qualified Immunity

The individual named defendants claim that they should, in effect, be granted summary judgment as to the 42 U.S.C. § 1983 and RFRA claims. The defendants argue that "there was no preexisting law that would put reasonable officials on notice that their actions were unlawful." Defendants' Memorandum of Law at 27.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Yet, even if the rights in question are clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990). For an action of a government employee not to be covered by qualified immunity "in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The *Anderson* court explained that it was not sufficient merely to show that a right existed, but that the "contours of the right [were] ... sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. at 640, 107 S.Ct. at 3039. Of particular relevance to this case, "[p]rison officials are charged with knowledge of relevant decisional law." *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989).

In order to support a claim for qualified immunity, defendants must show by a preponderance of the evidence that "they did

not know and reasonably should not have known that their actions would constitute a violation of plaintiff's constitutional rights." *Redcross v. County of Rensselaer,* 511 F.Supp. 364, 372 (N.D.N.Y.1981). In this case, defendants have clearly failed to meet this burden.

■ As an initial point, this court determined that collateral estoppel applied to certain claims asserted in this case. One issue necessarily decided in the state action, and material to this action, is whether the defendants could set forth any reason to justify their refusal to except the plaintiff from the hair length policy. The state court determined that the defendants had not shown any legitimate reason for the treatment of the plaintiff. On that basis alone, the court denies the defendants motion for dismissal of certain claims on the basis of qualified immunity.

■ In addition, the court finds, at least, a question of fact as to whether the individual defendants should be held to knowledge that their actions were in violation of the plaintiff's rights. Prior to the Supreme Court's decision in *Employment Div., Dep't of Human Resources v. Smith,*[6] it was clearly established that the burdening of religiously motivated conduct could only be upheld if the state could show that such action was necessary to serve a compelling state interest. *See Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). In 1990, the Supreme Court decided *Smith,* and the standard appeared to change.

As both parties concede, the rule in *Smith* applies to the relevant conduct in this action that occurred between 1990 and 1993, prior to the enactment of the RFRA. In *Smith,* Justice Scalia noted that the Court had held "that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action" if the case "involved ... the Free Exercise Clause in conjunction with other constitutional protections ..." 494 U.S. at 882, 110 S.Ct. at 1601. In the presence of this so-called "hybrid" case, the court must determine if the state has set

forth a compelling interest. *Id.* In this case, the court already has determined that, pursuant to the application of collateral estoppel, the state has set forth no legitimate interest, and therefore, no compelling interest. Thus, the court must determine if the plaintiff has a hybrid case. If, in fact, the plaintiff has a hybrid claim, then the defendants cannot prevail on their motion.

The plaintiff clearly has implicated the free exercise clause in this case. In addition, the record clearly reflects that the plaintiff wore his hair in a particular fashion to connote a certain degree of spiritualism, and to display his membership in a particular religion. Use of symbols to express ideas or beliefs has been held to implicate the right to freedom of speech and expression. *See, e.g., Tinker v. Des Moines Independent Com. Sch. Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974). Accordingly, this court finds that the plaintiff has implicated the free exercise clause and at least one other right as mandated by the now statutorily overruled *Smith.*[7]

Having found that the rights implicated, and the applicable law, at the relevant time periods were well-settled, it follows that the defendants may not prevail on their claim of qualified privilege. As stated above, "[p]rison officials are charged with knowledge of relevant decisional law." *Francis,* 891 F.2d at 46. In addition, as has been repeatedly stated herein, the defendant have not shown that there was any legitimate, much less compelling reason for the treatment of the plaintiff. Thus, the defendants' motion is denied.

## F. Claim Pursuant To 42 U.S.C. § 1981a

■ The plaintiff seeks an order of this court declaring that the plaintiff is entitled to compensatory and punitive damages pursuant to 42 U.S.C. § 1981a. The plaintiff also seeks leave to amend his complaint to "clarify that a claim is being made pursuant to

---

**6.** 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).

**7.** *See* RFRA, 42 U.S.C. § 2000bb(b)(1).

§ 1981a." Defendants' Memorandum of Law at 29.

As to the request for leave to amend the complaint pursuant to Fed.R.Civ.P. 15(a), the grant or denial of leave to amend is a matter within the sound discretion of the Court, and is generally granted absent a showing of prejudice by the adverse party. *See, Yellow Bus Lines v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 145 (D.C.Cir. 1989). Here, the defendants have not even addressed the issue, much less make any showing of prejudice. Accordingly, the court will grant the plaintiff's motion for leave to amend the complaint.

■ As to the plaintiff's motion, in effect, for summary judgment on the issue of liability under 42 U.S.C. § 1981a, the plaintiff's motion is denied. Given that such claim was not clearly raised in the complaint, that the record does not specifically address that particular issue, and that the defendants have not responded to the arguments of the plaintiff, the court finds that a determination as to summary judgment on this issue would be improper at this time. Accordingly, the plaintiff's motion is denied.

### G. Claim Pursuant To RFRA

The plaintiff seeks summary judgment as to liability under the RFRA. It is the plaintiff's claim that the Act provides a private cause of action, and applies retroactively.[8] Aside from claiming summary judgment as to the RFRA on the basis of various immunities, which the court already has denied, and claiming that collateral estoppel should not apply, which the court disagrees with, the defendants have not addressed the merits of the plaintiff's substantive arguments with respect to the RFRA. Nevertheless, the court will examine the RFRA claim.

■ The First Amendment to the United States Constitution mandates that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. The states are bound by this provision through the fourteenth amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). The Free Exercise Clause precludes all "governmental regulation of beliefs as such." *Sherbert v. Verner*, 374 U.S. 398, 402, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963). Government may, however, under certain circumstances, impinge on an individual's actions in accordance with those beliefs in exercising the power to prescribe or proscribe conduct. *See, e.g., Employment Div., Dep't. of Human Resources v. Smith*, 494 U.S. 872, 890, 110 S.Ct. 1595, 1606, 108 L.Ed.2d 876 (1990) (holding that Native American Indians who used peyote in religious ceremonies were not exempt from criminal statute prohibiting use).

■ The *Smith* Court departed from the generally accepted compelling interest standard. In response to *Smith*, Congress passed the RFRA[9] explicitly overruling *Smith*. The Act's stated purpose is "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1). The Act provides that government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government demonstrates that burdening the person (1) furthers a compelling governmental interest, and (2) advances that interest in the least restrictive means possible. *Id.* § 2000bb–1(a), (b). In effect, the Act demands that all governmental action that substantially interferes with the free exercise of religion be justified under a traditional strict scrutiny analysis.

■ The fact that the Act was passed in November 1993, after at least some of the acts complained of in this case, does not prevent its application in this case. The Act states that it "applies to all Federal and

---

**8.** The court has already determined that the RFRA abrogates the state's eleventh amendment absolute immunity.

**9.** Codified at 5 U.S.C. § 504; 42 U.S.C. §§ 1988, 2000bb, 2000bb–1 to –4.

State law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after the enactment of th[e] Act." *Id.* § 2000bb–3(a). The statutory language evinces clear congressional intent that the law apply retroactively.

■ Moreover, the Act clearly creates a private cause of action. The Act states the "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb–1(c). Thus, the court concludes that, given the clear intent of Congress as expressed in the statutory language, the RFRA creates a private cause of action, and applies retroactively.

■ As to the merits of the plaintiff's claim under RFRA, and pursuant to the application of collateral estoppel to this case, the court first finds that the plaintiff holds a sincere religious belief. In addition, the court finds that the defendants have substantially burdened the exercise of that belief. Having made such a determination, the court must then scrutinize the nature of the state's interest and the means used to further that interest.

The state has the burden of proving its actions are the least restrictive means of advancing a compelling interest. 42 U.S.C. §§ 2000bb–1(b), 2000bb–2(3). However, the state court has already concluded that the state has no legitimate interest. Moreover, since the very language of Directive 3083 provides for an alternative to wearing hair beyond one inch below the collar for female corrections officers, it is clear that the least restrictive means for advancing whatever interest the state has is already provided for in Directive 3083. Accordingly, the court grants partial summary judgment in favor of the plaintiff as to the RFRA claim.

**H. Continued Discovery**

The remaining discovery issues are referred to the Magistrate Judge for resolution.

**III. CONCLUSION**

For the foregoing reasons, the Court GRANTS the plaintiff's motion for summary judgment as to liability pursuant to Title VII, DENIES the defendants' motions to dismiss the plaintiff's claims on the basis of eleventh amendment absolute immunity, DENIES the defendants' motions to dismiss the plaintiff's claims pursuant to qualified immunity, GRANTS the plaintiff leave to amend the complaint to clarify a claim pursuant to 42 U.S.C. § 1981a, DENIES the plaintiff's motion for summary judgment as to the alleged claim pursuant to 42 U.S.C. § 1981a, GRANTS the plaintiff's motion for summary judgment as to the claim brought pursuant to the RFRA, and refers the discovery issues to the Magistrate Judge for determination.

**IT IS SO ORDERED.**